IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

CARLA EMERTON,

                    Plaintiff,

    v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                   Defendant.

OPINION AND ORDER

22-cv-423-slc
_____

Plaintiff Carla Emerton brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of an adverse decision of the acting commissioner of Social Security. Emerton argues that the administrative law judge (ALJ) who reviewed her claim at the administrative level erred by: (1) failing to properly evaluate the 2015 opinion of consulting psychologist Dr. Kathleen Senior; and (2) failing to resolve apparent conflicts between Emerton's overhead reaching limitation and the requirements of the jobs identified by the vocational expert. Because neither argument is persuasive, I am affirming the acting commissioner's decision.

FACTS

The following facts are drawn from the administrative record (AR), filed with the acting commissioner's answer, dkt. 9:

Emerton initially sought benefits based on physical and mental impairments on June 10, 2015, alleging disability beginning on July 14, 2014, when she was 40 years old. AR 13, 23, 630-31. Emerton has a date last insured of June 30, 2016. AR 13. After her application was denied initially in 2015, and on reconsideration in 2016, she requested an administrative hearing before an ALJ. AR 161-84. Her claim has proceeded to a hearing and been denied four times: the Appeals Council remanded the first three hearing decisions

in 2018, 2020, and 2021, but denied Emerton's latest request for review in June 2022.   AR 1-6, 13, 185-277.

Emerton's last hearing was held telephonically on October 19, 2021.   AR 13.   ALJ Debra Meachum issued a written decision on December 29, 2021, finding that Emerton suffered from the following severe impairments:   migraines, tension headaches, brain cyst, mild degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the left shoulder, depressive disorder, anxiety disorder, and post-traumatic stress disorder.   AR 17.   After finding that Emerton's impairments were not severe enough to meet or medically equal the criteria for a listed disability, the ALJ ascribed to Emerton the RFC to sedentary work with additional physical, mental, and environmental restrictions.   AR 17-19.   Based on the testimony of a vocational expert (VE), the ALJ found that Emerton was not disabled because she could perform a significant number of jobs in the national economy, including final assembler, circuit board assembler, and document preparer.   AR 24.   After the Appeals Council declined review, Emerton appealed to this court.

OPINION

In reviewing an ALJ's decision, this court is limited to determining whether the decision is supported by "substantial evidence," meaning "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).   This deferential standard of review means that the court does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [our] judgment for that of the Commissioner." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7ᵗʰ Cir. Apr. 14, 2021) (quoting *Burmester v. Berryhill*, 920 F.3d 507, 510 (7ᵗʰ Cir. 2019)); *see also Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7ᵗʰ Cir. 2022) (noting substantial evidence is not high threshold: "[w]e will affirm ALJ decisions to deny disability benefits when the ALJ follows applicable law and

supports its conclusions with substantial evidence."). We also do not "scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the administrative law judge must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted); *see also Deborah M.*, 994 F.3d at 788 ("an ALJ doesn't need to address every piece of evidence, but he or she can't ignore a line of evidence supporting a finding of disability"); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review."). Emerton bears the burden of proving that she is disabled. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

Against this backdrop, I address Emerton's two challenges to the ALJ's opinion:

## I.  Dr. Senior's Opinion

The ALJ attributed partial weight to the consultative opinion of Dr. Senior, who conducted a psychological examination of Emerton in October 2015. AR 20, 22, 933-36. Dr. Senior diagnosed Emerton with an unspecified anxiety disorder, recurrent major depression, and post-traumatic stress disorder (provisional due to a lack of treatment history). AR 936. She opined that Emerton was able to understand, carry out, and remember instructions for moderately complex procedures and could sustain concentration, persistence, and pace with only mild impairment, but she found that Emerton had moderate impairments in the following areas:  (1) maintaining effective interaction with supervisors, co-workers, and the public; and (2) handling normal pressures of the competitive work setting. *Id.* The ALJ stated that she considered these findings in light of all of the other evidence during the period at issue (July 14, 2014 to June 30, 2016) when limiting Emerton to a reduced range of unskilled work. AR 22.

3

Under the regulations applicable to Emerton's benefits application, an ALJ generally gives more weight to a medical source who has examined the claimant, presents relevant evidence to support their opinion, and whose opinion is consistent with the record as a whole.   20 C.F.R. § 404.1527(c)(1), (3), and (4).   The question for the court is whether the ALJ's rationale for the weight she gave to Dr. Senior's opinion is both discernible and adequately supported by the administrative record.   It was.

Emerton criticizes the ALJ for failing to provide a more detailed rationale based on the § 404.1527(c) factors, and for failing to cite any specific medical findings to support her decision to reject Dr. Senior's opinion.   But the ALJ discussed Emerton's social functioning elsewhere in her decision, which is enough. *See Jeske v. Saul*, 955 F.3d 583, 590 (7ᵗʰ Cir. 2020) ("The five-step evaluation process comprises sequential determinations that can involve overlapping reasoning . . .   Accordingly, when an ALJ explains how the evidence reveals a claimant's functional capacity, that discussion may doubly explain how the evidence shows the claimant's impairment is not presumptively disabling.").   Requiring ALJs to repeat such discussions in a decision would be redundant.   *Id.*

At step 2 of her analysis, the ALJ concluded that Emerton had only mild limitations in social functioning, citing Emerton's reports that she spent time with others, got along with authority figures, and interacted appropriately in public.   AR 18 (citing AR 677-78).   The ALJ acknowledged that Emerton reported problems getting along with family, friends, and neighbors and that she did not like crowds or loud noises.   *Id.* (citing AR 678).   However, the ALJ noted that the medical evidence showed that Emerton had an adequate rapport with providers and was described as pleasant and cooperative.   *Id.* (citing AR 935, 1095).

In addition, the ALJ noted that a mild social interaction limitation was consistent with assessments from reviewing the state agency psychological consultants.   AR 18.   At step 4 of her analysis, the ALJ gave significant weight to the October 2015 and March 2016

4

opinions of consultants James Murphy, Ph.D. and Ryan Hammond, who had reviewed the record, including Dr. Senior's opinion.[1]  AR 23.  The consultants determined that Emerton could, among other things, interact with others, respond to changes, and perform unskilled work with limitations in sustained concentration and persistence.  AR 164, 169, 178, 181.  Neither consultant assessed a social restriction in their functional capacity opinion.

Moreover, at the reconsideration level of review in March 2016, Raymond wrote that Emerton reported to the consultative physical examiner that she had no history of depression or mental condition, and that there was no report of mental health symptoms in her medical record apart from one mention of anxiety in 2014.  AR 178.  Although Emerton argues that the consultants issued their opinions prior to the submission of several medical records (whereas Dr. Senior had a more complete record), Emerton does not identify any evidence that would have made a difference had the consultants considered it.  *See Sosh v. Saul*, 818 F. App'x 542, 546 (7th Cir. 2020) ("A claimant who does not 'identify medical evidence that would justify further restrictions' is not entitled to remand.")  Further, Emerton's last date insured (June 30, 2016) was less than four months after Raymond reviewed Emerton's medical record.  Therefore, the ALJ was entitled to rely on the consultants' opinions in rejecting Dr. Senior's opinion regarding Emerton's social functioning.

Emerton also argues that the ALJ erred in failing to discuss the fact that Dr. Senior's opinion was consistent with and supported by the opinion of Dr. Ashok Khushalani, who testified as a psychological expert at Emerton's August 17, 2020 hearing.  Dr. Khushalani testified that  Emerton had moderate limitations interacting with others and

---

[1] Contrary to Emerton's assertion, the fact that the consultants did not expressly refute Dr. Senior's social interaction findings does not mean that they did not consider them.  In fact, the "additional explanation" sections of the consultants' findings refer to Dr. Senior's consultative examination and summarize some of her findings.  *See* AR 165, 178.

could interact with supervisors and coworkers only occasionally.  *See* AR 57-58 and 83-85.  As Emerton acknowledges, the ALJ complied with a previous remand order, *see* AR 274, to consider Dr. Khushalani's testimony.   However, the ALJ reasonably gave the social interaction limitation little weight because "it is not consistent with and supported by the substantial medical evidence of record" discussed in step 2 of the ALJ's analysis.   AR 23 (citing AR 677-78, 164-81).

In sum, the ALJ properly evaluated Dr. Senior's opinion in accordance with the regulation and cited logical reasons, supported by the record, for her conclusions.  To the extent that the record contained any conflicting evidence, the ALJ reasonably resolved those conflicts, precluding second-guessing by this court.  *See Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (court will affirm ALJ's assignment of weight to various medical opinions if it's supported by substantial evidence).

Emerton points out, accurately, that the current ALJ's decision finding of a mild social functioning limitation is inconsistent with the three previous ALJs' findings in this case.  But Emerton does not meaningfully develop this argument, citing no legal authority holding that an ALJ is bound by the decisions of previous ALJs who have considered a claimant's application.[2]   More importantly, Emerton has not identified any medical evidence that the ALJ failed to consider with respect to her social functioning that would dictate more restrictive limitations in this area.  *See Loveless v. Colvin*, 810 F.3d 502, 508

_____

[2] Although Emerton has waived her argument on this issue, for the sake of completeness, I note that the court of appeals has stated that while "an administrative agency must conform its further proceedings in the case to the principles set forth in the [appellate] decision, . . . [w]e have not explained how that directive applies to previous findings not reviewed on appeal—here to findings made by one ALJ that implicated issues reexamined by a second ALJ." *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020).  The court explained that "the operation of the doctrine in this area is complex and underdeveloped" and it left the decision for another day because it found the ALJ's decision unsupported for other reasons.  *Id.*

(7ᵗʰ Cir. 2016) (claimant has burden of identifying medical evidence justifying further restrictions entitling her to remand). In any case, Dr. Khushalani confirmed during her testimony that Emerton had not been in treatment or on medication for her mental health during the relevant period.[3] AR 84; *see also Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7ᵗʰ Cir. 2022) ("Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence.") (citing 42 U.S.C. § 423(d)(5)(A)). The fact that a different fact-finder could have weighed the evidence differently does not make an ALJ's decision erroneous. *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7ᵗʰ Cir. 2017). Accordingly, remand is not warranted on this issue.

## II.  The Vocational Expert's Testimony

At the hearing, the ALJ presented the VE with a hypothetical based on the RFC that she had assessed for Emerton, including a limitation that Emerton could occasionally reach overhead and frequently reach in all other directions. AR 52-53. The VE responded that the jobs of final assembler (21,000 nationally), circuit board assembler (10,000 nationally), and document preparer (56,000 nationally) would be available. AR 53. However, as Emerson points out, the Dictionary of Occupational Titles (DOT) states that all three jobs require frequent reaching and does not differentiate between overhead reaching and other types of reaching. *See* dkt. 10-1 (select pages from *Selected Characteristics of Occupations Defined in the Revised DOT*).

---

[3] Dr. Khushalani testified that Emerton stopped taking psychotropic medication in the 1990s and did not resume until 2018.

Emerton argues that the ALJ erred by relying on the VE's testimony because the requirements of the jobs identified obviously conflict with the occasional overhead reaching limitation in the ALJ's RFC and hypothetical question. *See* SSR 00-4p ("When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [VE] evidence to support a determination or decision about whether the claimant is disabled."); *Surprise v. Saul*, 968 F.3d 658, 662 (7th Cir. 2020) (noting obligation that SSR 00-4p imposes on ALJ to uncover and resolve "obvious" conflicts between VE testimony and DOT).

Contrary to Emerton's assertion, the ALJ performed her duty under SSR 00-4p.  The ALJ specifically asked the VE whether her testimony would be consistent with the DOT, and the VE said that it would.  AR 52.  In addition, the ALJ generally asked the VE about the basis for her testimony about limitations not specifically defined in the DOT, and the VE responded "[f]or those answers, I relied on my experience and training as a vocational counselor."  AR 54.

Emerton asserts, without citing any legal authority, that "experience" is not a reasonable explanation that resolves the specific conflict between the DOT and the vocational expert's testimony.  However, Emerton's attorney did not object to any of the VE's testimony, question the VE's experience, or point to any conflicts between the VE's testimony and the DOT.  *See* AR 52, 54-55.  The Seventh Circuit has made clear that "[a] claimant who fails to object at the hearing forfeits any challenge to the VE's testimony." *Fetting v. Kijakazi*, 62 F.4th 332, 338 (7th Cir. 2023) (further noting that an objection must be specific).

Emerton also briefly argues that the VE provided too vague of a response to her attorney's question about the bases for her job numbers.  But like with her previous arguments, Emerton forfeited her challenge to the VE's methodology by failing to object to it

at the hearing before the ALJ.  *See Fetting*, 62 F.4th at 338 ("[C]laimant must do more than make a general objection or vaguely ask the VE about h[er] methodology.").  Although Emerton's attorney asked the VE about the source of her job numbers—which the VE said included Occupational Employment Quarterly, Bureau of Labor Statistics, and Job Browser Pro—the attorney did not follow up on the VE's response or raise any objection.  *See* AR 55.

Apart from Emerton waiving these arguments, they are unpersasive.  First, the Seventh Circuit has held that VEs "have specialized and current knowledge of . . . the existence and numbers of [] jobs in the national economy," that they may rely on "data developed through their own experiences and research," and that they "can be deemed credible even if [they] provide[] no underlying data."  *Krell v. Saul*, 931 F.3d 582, 584 and 587 (7ᵗʰ Cir. 2019) (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 and 1157 (2019)).

Second, both the Seventh Circuit and this court have made clear that a VE's testimony does not conflict with the DOT if the DOT does not supply the information in the first place.  *See, e.g., Collins v. Berryhill*, 743 F. App'x 21, 26 (7ᵗʰ Cir. 2018) ("Because the DOT does not specify whether jobs allow changing from sitting to standing, the VE's testimony supplemented the DOT and did not conflict with it."); *Steele v. Kijakazi*, No. 20-987, 2021 WL 5881454, at *5 (W.D. Wis. Dec. 13, 2021) (summarizing cases rejecting argument that DOT's silence on a restriction has the same significance as a conflict between DOT and a restriction).  Thus, Emerton's suggestion that the VE's testimony conflicts with the DOT because the DOT does not address overhead reaching is unpersuasive.  Notably, Emerton did not respond to any of the commissioner's arguments to this effect in her reply brief.

## III.  Conclusion

In sum, Emerton has failed to show that the ALJ committed any harmful legal errors or that her decision that Emerton is not disabled is not supported by substantial evidence. Therefore, I conclude that Emerton has failed to meet the stringent standard for an award of disability under the Social Security Act.

ORDER

IT IS ORDERED that the decision of defendant Kilolo Kijakazi, Acting Commissioner of Social Security, is AFFIRMED.  The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 28th day of August, 2023.

BY THE COURT:

/s/
_____
STEPHEN L. CROCKER
Magistrate Judge

11